UNITED STATES v. DAVID BURNS and GIDEON BURNS.

(Circuit Court, D. West Virginia. January 25, 1893.)

1. NAVIGABLE WATERS—OBSTRUCTION—THE DUTY OF FEDERAL OFFICERS.
   A criminal prosecution for the obstruction of navigable waters of the United States under Act Cong. Sept. 19, 1890, §§ 6, 7, 10, (26 St. p. 426,) may be maintained, although neither the officers and agents of the United States in charge of works for the improvement of said waters, nor the collectors of customs or other revenue officers, have given information to the district attorney, as provided in section 11.

2. SAME—INDICTMENT—DUPLICITY.
   An indictment under Act Sept. 19, 1890, § 6, for casting certain rubbish, tending to obstruct navigation, into the Little Kanawha river from a certain ship and from the shore and from a certain pier upon the bank, is bad for duplicity, since it charges three distinct offenses.

**3. SAME.**

Such an indictment, describing the rubbish as "ballast, stone, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, and other waste of divers kinds," and alleging that it was cast into the Little Kanawha river "at the district of West Virginia," is bad, although it quotes the words of the statute, since it does not give the defendant sufficiently clear notice of the character of the article or of the place where the alleged offense was committed.

**4. SAME.**

An indictment in similar terms, charging the placing of such articles upon the banks of the Little Kanawha river "at the district of West Virginia," in a place where the same were liable to be washed into the river, and thereby impede navigation, is bad for want of particularity of place, which is of the utmost importance in the offense charged.

**5. SAME.**

An indictment charging the building of a certain wharf, pier, or other structure "in, along, upon, and across" the Little Kanawha river "at the district of West Virginia," so as to obstruct navigation, (in violation of Act Sept. 19, 1890, § 7,) is bad for want of particularity of place.

**6. SAME.**

Such an indictment, which charges the building of "a certain wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, and certain other structures," is bad for duplicity.

**7. SAME.**

It is not a crime, under Act Sept. 19, 1890, § 10, to float rafts, logs, timber, boats, and vessels, loose and adrift, in and upon the navigable waters of the United States, especially when the offense is alleged to have been committed upon the Little Kanawha river, the navigation of which has been improved for that very purpose, and when the alleged offender pays toll, under lawful regulations, to the Little Kanawha Navigation Company, for the privilege of floating such articles upon the river and through the locks of the company. The obstructions to navigation prohibited by section 10 are only those which are permanent in their nature.

**8. SAME.**

An indictment charging that defendant, in conducting the logging business, unlawfully created an obstruction, not affirmatively authorized by law, to the navigable capacity of the Little Kanawha river, is bad for want of particularity of description of the offense.

**9. SAME.**

An indictment charging the excavation of the bottom, shore, side, bed, and channel of the Little Kanawha river "at the district of West Virginia," and with filling the same, thereby unlawfully altering the course and capacity of the channel of the said river, in violation of Act Sept. 19, 1890, § 7, is bad for want of particularity of place.

**10. SAME.**

Act Sept. 19, 1890, § 7, forbidding the excavation and filling, the altering and modifying, of the course, location, and capacity of the channel of navigable waters, refers to such permanent construction as tends to obstruct navigation, the building of which must, by the provisions of such section, have the approval and authorization of the secretary of war, and not to such alteration of the channel as would result from a violation of section 6.

Indictment of David and Gideon Burns for obstruction of navigable waters. On a plea in abatement, demurrer, and motion to quash. Motion granted.

G. C. Sturgiss, U. S. Dist. Atty.

H. M. Russel, B. M. Ambler, J. B. Jackson, and W. N. Miller, for defendants.

Before GOFF, Circuit Judge, and JACKSON, District Judge.

GOFF, Circuit Judge. This indictment, containing six counts, charges the defendants with violating the provisions of sections 6, 7, and 10 of the act of congress approved September 19, 1890, entitled "An act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes." Defendants demur to the indictment, and to each count thereof, and move to quash the same. (By consent of the district attorney and defendants an order was entered in this case, agreeing that the filing of the demurrer and motion to quash should not be construed as waiving the plea in abatement, filed by defendants.)

Sections 6, 7, and 10 of the act mentioned read as follows:

"Sec. 6. That it shall not be lawful to cast, throw, empty, or unlade, or cause, suffer, or procure to be cast, thrown, emptied, or unladen, either from or out of any ship, vessel, lighter, barge, boat, or other craft, or from the shore, pier, wharf, furnace, manufacturing establishments, or mills of any kind whatever, any ballast, stone, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, or other waste of any kind, into any port, road, roadstead, harbor, haven, navigable river or navigable waters of the United States, which shall tend to impede or obstruct navigation, or to deposit or place, or cause, suffer, or procure to be deposited or placed, any ballast, stone, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, or other waste in any place or situation on the bank of any navigable waters, where the same shall be liable to be washed into such navigable waters, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: provided, that nothing herein contained shall extend or be construed to extend to the casting out, unlading, or throwing out of any ship or vessel, lighter, barge, boat, or other craft any stones, rocks, bricks, lime, or other materials used or to be used in or toward the building, repairing, or keeping in repair any quay, pier, wharf, weir, bridge, building, or other work lawfully erected or to be erected on the banks or sides of any port, harbor, haven, channel, or navigable river, or to the casting out, unlading, or depositing of any material excavated for the improvement of navigable waters into such places and in such manner as may be deemed by the United States officer supervising said improvement most judicious and practicable, and for the best interests of such improvements, or to prevent the depositing of any substance above mentioned under a permit from the secretary of war, which he is hereby authorized to grant, in any place designated by him, where navigation will not be obstructed thereby.

"Sec. 7. That it shall not be lawful to build any wharf, pier, dolphin, boom, dam, weir, breakwater, bulkhead, jetty, or structure of any kind outside established harbor lines, or in any navigable waters of the United States where no harbor lines are or may be established, without the permission of the secretary of war, in any port, roadstead, haven, harbor, navigable river, or other waters of the United States, in such manner as shall obstruct or impair navigation, commerce, or anchorage of said waters; and it shall not be lawful hereafter to commence the construction of any bridge, bridge draw, bridge piers and abutments, causeway, or other works over or in any port, road, roadstead, haven, harbor, navigable river, or navigable waters of the United States, under any act of the legislative assembly of any state, until the location and plan of such bridge or other works have been submitted to and approved by the secretary of war, or to excavate or fill, or in any manner to alter or modify, the course, location, condition, or capacity of the channel of said navigable water of the United States, unless approved and authorized by the secretary of war: provided, that this section shall not apply to any bridge, bridge draw, bridge piers and abutments, the construction of which has been heretofore duly authorized by law, or be so construed as to authorize the construction of any bridge, drawbridge, bridge piers and abutments, or other works, under an act of the legislature of any state, over or in any stream, port, roadstead,

haven, or harbor, or other navigable water not wholly within the limits of such state."

"Sec. 10. That the creation of any obstruction, not affirmatively authorized by law, to the navigable capacity of any waters in respect of which the United States has jurisdiction, is hereby prohibited. The continuance of any such obstruction, except bridges, piers, docks, and wharves, and similar structures erected for business purposes, whether heretofore or hereafter created, shall constitute an offense, and each week's continuance of any such obstruction shall be deemed a separate offense. Every person and every corporation which shall be guilty of creating or continuing any such unlawful obstruction in this act mentioned, or who shall violate the provisions of the last four preceding sections of this act, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five thousand dollars, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. The creating or continuing of any unlawful obstruction in this act mentioned may be prevented and such obstruction may be caused to be removed by the injunction of any circuit court exercising jurisdiction in any district in which such obstruction may be threatened or may exist, and proper proceedings in equity to this end may be instituted under the direction of the attorney general of the United States."

This legislation is an exercise by congress of its constitutional right to regulate commerce between the states, and the object evidently is to take exclusive control of the navigable waters of the United States, and protect the interests of commerce from the obstructions, encroachments, and carelessness of those using the same, and occupying the lands adjacent thereto.

Defendants have tendered a plea in abatement, to the filing of which the district attorney has objected. The plea is as follows:

"And the said David Burns and Gideon Burns, in their own proper person, come into court here, and, having heard the said indictment read, say that the said United States ought not to further prosecute the said indictment against them, the said David Burns and Gideon Burns, because they say that no officer or agent having supervision on the part of the United States of any works in progress for the preservation or improvement of any navigable waters of the United States, and no United States collector of customs, or any other revenue officer, did give any information or make any complaint to the district attorney of the United States for the district aforesaid, regarding the matters in said indictment set forth, or regarding any violation of any provision of the act of congress entitled 'An act making appropriations for the construction and repair and preservation of certain public works on rivers and harbors, and for other purposes,' passed by the congress of the United States, and approved September 19, 1890; nor did any officer, or agent having such supervision, or collector or other revenue officer, or any other officer or agent of the United States, authorized in that behalf, sanction, authorize, or procure, or make himself responsible for, the said indictment, or any part thereof, as contemplated by section 11 of said act of congress. Wherefore they pray judgment, and that by the court here they may be discharged and dismissed from the premises in the said indictment above specified." (Verified by affidavit.)

This plea is based on section 11 of the act of congress before mentioned, the section reading as follows:

"Sec. 11. That it shall be the duty of officers and agents having the supervision, on the part of the United States, of the works in progress for the preservation and improvement of said navigable waters, and, in their absence, of the United States collectors of customs and other revenue officers, to enforce the provisions of this act by giving information to the district attorney of the United States for the district in which any violation of any pro-

vision of this act shall have been committed: provided, that the provisions of this act shall not apply to Torch lake, Houghton county, Michigan."

Counsel for defendants insist that this section confers upon the officers and agents of the United States having supervision of the work in progress for the preservation and improvement of the navigable waters of the United States, and, in their absence, upon the collectors of customs and other revenue officers, the exclusive right to enforce the provisions of the act of congress mentioned; that they are to determine when the law has been violated, and when and against whom proceedings shall be instituted; and that, if they refuse or fail to give information to the district attorney of the violation of the act referred to, no indictments can be returned, or no informations filed. I do not concur in this construction of the eleventh section. I think the congress intended to require of the officers and agents referred to special attention to the requirements of said act of congress, and to charge them with the duty of protecting the navigable waters of the country from the obstructions to commerce prohibited therein. It is made their duty to give information to the district attorney of any violation of the provisions of the legislation referred to, as their attention would likely be called to such infractions of the law; but the right and the duty of the district attorney and of the grand jury to initiate proceedings in the manner usual to criminal cases, is not affected, and remains as heretofore. The objection of the district attorney to the filing of the plea in abatement is sustained.

I come now to the consideration of the demurrer and motion to quash. The indictment reads as follows:

"In the Circuit Court of the United States of America for the District of West Virginia, in the Fourth Circuit, at Parkersburg, in the year of our Lord one thousand eight hundred and ninety-one.

June Term, 1891.

"First count. The grand jurors of the United States of America within and for the district of West Virginia, now attending the said court, upon their oaths do present that David Burns and Gideon Burns heretofore, to wit, on the —— day of October, in the year of our Lord one thousand eight hundred and ninety, at the district of West Virginia, aforesaid, did willfully and unlawfully cast, throw, empty, and unlade, and cause, procure, and suffered to be cast, thrown, emptied, and unladen, from and out of a certain ship, vessel, lighter, barge, boat, and other craft then and there in and upon the Little Kanawha river, and from the shore of said Little Kanawha river, and from a certain pier, wharf, furnace, manufacturing establishment, and mill, then and there situate upon the bank of and adjacent to the said Little Kanawha river, certain ballast, stone, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, and other waste of divers kinds into the said Little Kanawha river, which said river was then and there a navigable river, and a part of the navigable waters of the United States, and which said ballast, stone, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, and other waste so cast, thrown, emptied, and unladed did then and there tend to impede and to obstruct navigation in and upon the said Little Kanawha river, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"Second count. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that David Burns and Gideon Burns heretofore, to wit, on the —— day of October, in the year of our Lord one thousand eight hundred and ninety, at the district of West Virginia, aforesaid, did willfully and un-

lawfully deposit and place, and cause, suffer, and procure to be deposited and placed, certain ballast, stone, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, and other waste of divers kinds, in such a place and situation on the bank of the Little Kanawha river, which said Little Kanawha river was then and there a navigable river, and a part of the navigable waters of the United States, where the same was and is liable to be washed into the said Little Kanawha river, by ordinary and high tide, and by storms, floods, and otherwise, whereby navigation might and may be impeded and obstructed in and upon the said Little Kanawha river, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"Third count. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that David Burns and Gideon Burns heretofore, to wit, on the ———— day of October, in the year of our Lord one thousand eight hundred and ninety, at the district of West Virginia, aforesaid, did knowingly, willfully and unlawfully build a certain wharf, pier, dolphin, boom, dam, weir, breakwater, bulkhead, jetty, and certain other structures in, along, upon, and across the Little Kanawha river, on which river no harbor lines were or are established, and without the permission of the secretary of war, in such a manner that the said wharf, pier, dolphin, boom, dam, weir, breakwater, bulkhead, jetty, and structures did, and still do, obstruct and impede navigation, commerce, and anchorage on, in, and upon said river and waters, which said Little Kanawha river is and was a navigable river, and a part of the navigable waters of the United States, in respect of which the United States then and there had, and still has, jurisdiction, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"Fourth count. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that David Burns and Gideon Burns heretofore, to wit, on the ———— day of October, in the year of our Lord one thousand eight hundred and ninety, at the district of West Virginia, aforesaid, did willfully and unlawfully cast, throw, and place, and cause and procure to be cast, thrown, and placed, in, into, and upon the waters of the Little Kanawha river, which said river was then and there a navigable river, and a part of the navigable waters of the United States, divers and sundry rafts, logs, sticks of timber, planks, boards, lumber, slabs, and cross-ties, barges, boats, and vessels, loose and adrift, and unconnected and unfastened to and with each other or with the bank, bottom, or shore of said river, or with any pier, post, wharf, draw, abutment, or any other structure or thing, by which the same might or could be handled, controlled, steered, managed, or navigated, and without any sail, oar, rudder, paddle wheel, steering gear, or other apparatus or device by which the same could be steered, guided, propelled, directed, or controlled, and without any agent, employe, servant, or other person upon or in charge of, or having control in any wise of, said rafts, logs, sticks of timber, planks, boards, lumber, slabs, cross-ties, barges, boats, and vessels, and without any light, signal horn, whistle, or any other device or apparatus thereon or connected therewith, to give signal, warning, or notice of the presence or approach or of the vicinity of the said rafts, logs, sticks of timber, planks, boards, lumber, slabs, cross-ties, barges, boats, and vessels; and the said Gideon Burns and David Burns then and there willfully and unlawfully caused and permitted the said rafts, logs, sticks of timber, planks, boards, lumber, slabs, cross-ties, barges, boats, and vessels to float, drift, and be carried about upon and in the waters of the said Little Kanawha river, propelled, moved, and carried about and controlled only by the current, eddies, and backwater of said river, and by the winds and storms that pass over and upon said river, by all which the navigation of said river was then and there and thereby greatly obstructed, impeded, and endangered, and an obstruction to the navigable capacity of said Little Kanawha river was created and continued for a long time, to wit, for the space of one week, which obstruction was not affirmatively authorized by law, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"Fifth count. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that David Burns and Gideon Burns heretofore, to wit, on

the ―――― day of October, in the year of our Lord one thousand eight hundred and ninety, at the district of West Virginia, aforesaid, were engaged in and carried on and conducted the timbering and logging business on the waters of the Little Kanawha river, and in conducting and carrying on said business they then and there and thereby knowingly, willfully, and unlawfully created an obstruction not affirmatively authorized by law to the navigable capacity of the said Little Kanawha river, which said river was then and there a navigable river, and a part of the navigable waters of the United States, in respect of which the United States had and has jurisdiction, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"Sixth count. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that David Burns and Gideon Burns heretofore, to wit, on the ―――― day of October, in the year of our Lord one thousand eight hundred and ninety, at the district of West Virginia, aforesaid, did willfully and unlawfully alter and modify the course, location, condition, and capacity of the channel of the Little Kanawha river, the said Little Kanawha river being then and there a navigable river, and a part of the navigable waters of the United States, by then and there excavating the bank, bottom, shore, side, bed and channel of the said Little Kanawha river, and by then and there filling the side, bed, shore, bank, and channel of said Little Kanawha river, and by casting, throwing, emptying, and unlading, and by then and there causing, suffering, and procuring to be cast, thrown, emptied, and unladen, ballast, stone, rocks, brick, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, and other waste of divers and sundry kinds upon the shore, bank, sides, and bottom of said river, and into the bed, channel, and waters of the said navigable river, and by depositing and placing, and causing, suffering, and procuring to be deposited and placed, a large quantity of ballast, stone, rocks, brick, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, and other waste in, along, upon, and against the bank, side and shore, bed and bottom of the said navigable river, and in other manners, without the said excavating, depositing, placing, filling, casting, throwing, emptying, and unlading said materials in manner and form as stated aforesaid having been in any wise approved and authorized by the secretary of war, and contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

[Signed]        "Geo. C. Sturgiss, U. S. District Attorney.
"Upon the information of
   "John Murry,
   "R. C. Buckner,
     "Parkersburg, W. Va.

"Witnesses sworn in open court, and sent to the grand jury to give evidence."

It is argued by counsel for defendants that the indictment does not state with sufficient clearness the offense charged, and that the accused are unable to determine from it the nature of the accusation they are called upon to answer; also that the matters and things set forth in the six counts do not constitute any offense against the laws of the United States, and do not come within the true intent and meaning of the act of congress, under which they are drawn; and it is also claimed that several of the counts are bad for duplicity, several separate offenses being charged in each of such counts.

The first count is drawn under section 6, by which the casting, throwing, etc., of certain articles from or out of any vessel, or from the shore, into navigable waters, which shall tend to impede or obstruct navigation, is prohibited. The district attorney claims that

but one offense is charged in this count; that it is reasonably definite; and that it is good pleading, as the language of the statute has been followed and used. What is the offense charged in this count? What are the defendants accused of doing? If but one violation of section 6 is set forth, which one is it? Can the court tell from this count in what manner the law has been violated? Did the defendants unlawfully throw from a steamboat, then in the Little Kanawha river, in October, 1890, certain rubbish into the river, it being a navigable river of the United States, in the district of West Virginia, and did the rubbish so thrown tend to impede and to obstruct navigation in and upon said river? If the defendants did so, and there is sufficient allegation of time, place, and circumstances, would not the count be good? And, if so, is there not much in this count that should not be in it? Is it proper to charge in one count that the defendants "did unlawfully cast, throw, empty, and unlade, and cause, procure, and suffer to be cast, thrown, emptied, and unladen, from and out of a certain ship, vessel, lighter, barge, boat, and other craft, then and there in and upon the Little Kanawha river," certain ballast, stone, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, and other waste of divers kinds, into the said Little Kanawha river, a navigable river of the United States, and which articles so cast did then and there tend to impede and obstruct navigation in and upon said river; and that they did so cast, throw, empty, and unlade the same articles, at the same time, into the same river, from the shore of the river, and also from a certain pier, wharf, furnace, manufacturing establishment, and mill, situate upon the bank of and adjacent to said river, which said articles so cast did also so tend to impede and obstruct navigation on said river? In my opinion, there are several distinct offenses combined in this one count, or, rather, attempted to be set forth in it. The district attorney claims that he has but followed the words of the statute in the description of the offense, and has simply adopted the usual rule that both at common law and under penal statutes permits offenses to be alleged cumulatively, as that "the defendant published and caused to be published a certain libel," that he "forged and caused to be forged," etc., from the well-known precedents where one offense is alleged to have been committed in different ways. The rule cited is good, but it does not sustain the position assumed. If the language of a statute creates or describes several separate offenses, then, in charging one of them, only the words as applicable to the one intended to be set forth should be used in the count charging the violation, and all of the language used in describing all the offenses should not be employed. Where, in the instances referred to, "the defendant published and caused to be published a certain libel," and "forged and caused to be forged a certain note, in each case but one offense is charged; while in the statute under consideration it is an offense to cast any of the articles mentioned from a vessel in the river, an offense to cast any of them from the shore of the river, and a separate, though a like offense to so cast any of them from a wharf upon the bank

of the river into the same, it being navigable, and the articles so cast tending to impede and to obstruct navigation. The difficulty is not in the description of the offense, so far as that part of the count is concerned, but in the combination of separate offenses in the one count, and the confusion and uncertainty produced thereby. I do not think it is improper to charge the defendants with unlawfully casting, throwing, emptying, and unlading, and causing, procuring, and suffering to be cast, thrown, emptied, and unladen, from and out of a certain vessel, then and there in and upon the Little Kanawha river, certain stone into the said river, which was then and there a navigable river of the United States, which said stone, so cast, etc., then and there tended to impede and to obstruct navigation in and upon said river; and a count so drawn, with proper allegations as to time, place, and circumstances, would, in my judgment, be good.

I cannot agree with the district attorney in his claim that proof that the defendants did throw or cause to be thrown from any vessel on the Little Kanawha river, at the time and in the district alleged, any of the many articles mentioned, which shall have the result charged, will sustain this count, and justify a verdict of guilty on it. I cannot agree that all the other allegations and charges are mere words of description of the one offense as to which such evidence would be offered; nor do I think that in this count they can be regarded as surplusage. In my opinion, the count is bad, for the reasons I have stated. If it was good as matter of pleading, then, in order to convict under it, it would be necessary to prove that the defendants did each and all of the different matters charged in the count. I do not mean that proof would be required that they did cast, etc., each and all of the articles enumerated, but that it would be necessary to show that some of said articles were so cast, etc., from each of said separate places, establishments, and objects. A conviction upon this count, as drawn, would not show for what offense defendants were found guilty.

There are other objections to this count. The defendants should be advised more clearly as to the character of the article or waste matter they so threw into the river, and as to the place where it was so done,—what was it, and where was it? The evidence must show it, and the district attorney must be advised as to the place, or the prosecution must fail. Then why should not the defendants be informed? The government does not wish their conviction unless they be guilty, and it should not be permitted to demand their conviction until it has given them a full and fair opportunity to make their defense to a plain and positive charge. How, in fact, can the defendants prepare for trial on this count? Will they endeavor to show that they did not throw sawdust into the river from their mill on the bank of the river in Wirt county, and be met with testimony that they cast ashes from a steamboat on said river, in Wood county? The party accused has the constitutional right to be informed of the nature and cause of the accusation. In U. S. v. Mills, 7 Pet. 142, this was construed to mean that the indict-

ment must set forth the offense "with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged." In U. S. v. Cook, 17 Wall. 174, it was held that "every ingredient of which the offense is composed must be accurately and clearly alleged." It is well understood in criminal pleading that where the definition of an offense, either at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as the definition; but it must give the species; it must give particulars. 1 Archb. Crim. Pr. & Pl. 291. An indictment should furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of either conviction or acquittal, for protection against a further prosecution for the same offense; and it should also, by its statements and allegations, so inform the court that it may decide whether they are sufficient to support a conviction. A crime is made up of acts and intent, and these must be set forth in the indictment with reasonable particularity of time, place and circumstance. The indictment must allege everything which it is necessary to prove in order to convict the party accused. All the facts which enter into an offense must be set down by express averment, and the allegation must be full, nothing being left to intendment. The judge should not assume that anything is meant which is not in exact words plainly alleged. The accumulated wisdom of the past, of years of judicial investigation, has established these rules. They are necessary, not to aid the guilty, but to protect the innocent. As has been well said: "Precision in the description of the offense, is of the last importance to the innocent, for it is that which marks the limits of the accusation, and fixes the proof of it." Judge Story, in his commentaries on the Constitution of the United States, (volume 2, § 1785,) on this subject, says:

"The indictment must charge the time and place and nature and circumstances of the offense with clearness and certainty, so that the party may have full notice of the charge, and be able to make his defense with all reasonable knowledge and ability."

In U. S. v. Simmons, 96 U. S. 360–362, Mr. Justice Harlan uses this language:

"Where the offense is purely statutory, having no relation to the common law, it is as a general rule sufficient in the indictment to charge the defendant with acts coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter. 1 Bish. Crim. Proc. § 611, and authorities there cited. But to this general rule there is the qualification, fundamental in the law of criminal proceeding, that the accused must be apprised by the indictment with reasonable certainty of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offense. An indictment not so framed is defective, although it may follow the language of the statute."

In U. S. v. Nelson, 52 Fed. Rep. 646,—an indictment under the act of congress "to protect trade and commerce against unlawful restraint and monopolies,"—Judge Nelson uses this language:

"It is urged by the district attorney that, the offense being statutory, the general rule in such cases, to wit, that it is sufficient to allege the offense in

the language of the statute, will sustain the first six counts. I cannot agree to that. This is not a case where every fact necessary to constitute the offense is charged, or necessarily implied, by following the words of the statute, and the words themselves fully and directly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense; and it is not sufficient to follow only the language of the statute. * * * The charge must contain a statement of facts constituting the offense, and a certain description of it, which this indictment does not in either of the first six counts, and they cannot be sustained."

It is charged in the second count, which is also drawn under the sixth section of the act of congress I have mentioned, that the defendants, in October, 1890, in the district of West Virginia, did unlawfully deposit and place, and cause, suffer, and procure, to be deposited and placed, certain ballast, stone, etc., and other waste of divers kinds, in such a place and situation on the bank of the Little Kanawha river, then and there a navigable river, where the same was and is liable to be washed into the said river by storms, floods, and otherwise, whereby navigation might and may be impeded and obstructed in and upon the said river, contrary, etc. It will be observed from the reading of the section alluded to that the depositing and placing of ballast, stone, and the other articles mentioned in the count under consideration in any place or situation on the bank of a navigable river is not absolutely prohibited, but the prohibition applies only to such places where the same shall be liable to be washed into such navigable river by ordinary or high tides, or by storms or floods or otherwise, and not even then unless navigation shall or may be impeded or obstructed. The importance of observing the rules I have already referred to is strikingly illustrated by this second count. In the offense here alluded to, place is of the utmost importance, and the allegation as to the location should be clear and unequivocal. To require this is not unreasonable; it is not demanding anything that the district attorney is not fully advised of. The necessity to so allege could not be avoided in this instance by saying that "it is to the jurors unknown," for, in order to convict, it must be shown to be of the character of places prohibited by the statute, and consequently the government is presumed to have the information. If so, it is but simple justice that the defendants be advised of it. Surely it is not sufficient to say, as does this count, that the offense was committed "at the district of West Virginia, at a place on the bank of the Little Kanawha river," and thus permit the United States to offer testimony tending to locate the place anywhere in five counties, from the source to the mouth of the river. The defendants should not be liable to be surprised as to the place, but should be fully advised, and an opportunity given them to show, by witnesses who have examined the place designated, that it is not such a situation where the articles enumerated were liable to be washed into the river, and navigation impeded thereby. The count is bad.

The third count is based on section 7, and charges that defendants, in October, 1890, at the district of West Virginia, did knowingly, willfully, and unlawfully build a certain wharf, pier, dolphin,

boom, dam, weir, breakwater, bulkhead, jetty, and certain other structures in, along, upon, and across the Little Kanawha river, on which river no harbor lines were or are established, and without the permission of the secretary of war, in such a manner that the said wharf, etc., did and still do obstruct and impede navigation, etc. The statute makes it an offense to build a wharf outside established harbor lines, or in any navigable waters of the United States where no harbor lines are or may be established, without the permission of the secretary of war, in any port, roadstead, etc., in such manner as shall obstruct or impair navigation, commerce, etc. It is not an offense, under this section, to build any of the structures mentioned in the third count, in any of the places designated, without the permission of the secretary of war, unless the structures so built are so constructed as to obstruct or impair navigation, commerce, and anchorage of the waters where they are located. Consequently the place where the structure is located should be given with more definiteness (than this count does) than "in, along, upon, and across the Little Kanawha river." If a wharf has been built, there is no trouble in locating it. If a pier has been constructed, there is no difficulty in saying where it can be found. If a dam has been erected, it is easily described. The defendants may have built more than one of each of such structures, and one only in such manner as to impede navigation and commerce. In that event, they should be advised as to the one complained of, in order that they may have time to show if they can, that by and through it, they have not violated the law.

There is another objection to this count. I find, (as I did in reference to the first count,) that there are several distinct offenses combined and charged in this the third count. The reasons assigned for holding the first bad apply even with greater force to the one now under consideration.

The fourth count is drawn under the provisions of section 10, and it is claimed that the defendants, by throwing and placing the rafts, logs, sticks, boats, and other things in the count mentioned, under the circumstances described, have violated that section. Defendants insist that the matters and things stated and set forth in this count do not constitute any offense against the laws of the United States, and do not come within the purview, true intent, and meaning of the act of congress, of which section 10 is part. What is it that the congress has prohibited by the tenth section? All obstructions to the navigable capacity of the river are not prohibited, but only those "not affirmatively authorized by law." This legislation, in effect concedes that which is well known to be true, that the necessities of commerce, the interests of the country, demand that certain obstructions to the navigable capacity of our rivers must be authorized, and their creation permitted. Under certain circumstances, bridges, piers, docks, dams, and booms, the object of which is to facilitate trade and commerce, become in many instances serious obstructions to the navigable capacity of our waters, and yet they are "affirmatively authorized by law." In the seventh section of the act under consideration congress has authorized the building

of many structures that may obstruct or impair the navigable waters of the United States, provided the permission of the secretary of war has been first obtained. By that section it is made unlawful to hereafter build in the navigable waters of the United States any structure of any kind in such manner as will obstruct or impair navigation, without the permission of the secretary of war. The evident intention of congress was to take exclusive charge of such matters in the future for the United States, and to place them under the charge of the secretary of war, leaving it to his discretion to authorize or prohibit the building of the structure and the creation of the impairment of navigation; thus rendering it unnecessary to apply to congress for permission, or special legislation in particular cases, as had frequently been done theretofore. At the time of the passage of this act authority to build structures of the character mentioned in it had been given by the states as well as by the United States, and congress did not intend to prevent their construction absolutely, but prohibited those only authorized by the legislative assembly of the states until the location and plan of the structure had been submitted to and approved by the secretary of war. It was thus possible, even after the passage of the act, to construct certain structures in a manner prohibited by the act, provided it had been authorized by law previous to such enactment. I think that the obstructions contemplated by the tenth section—those that have not been affirmatively authorized by law, and are therefore prohibited—are such obstructions as are permanent in their nature, as are created for special purposes, by the usual modes of construction. I cannot agree with the district attorney in his construction of the statute, and I cannot hold that it was the intention of congress, by this tenth section, to prohibit the floating of rafts, logs, timber, boats, and vessels, loose and adrift, in and upon the navigable waters of the United States. I cannot conclude that congress intended to make it a crime to carry on a business in which vast sums of money have been invested in most of the states of the nation, a business that has heretofore received the encouragement and protection of the law, the aiding of which was one of the commendable objects had in view by those who commenced the work of improving the very river that is now said to be obstructed, by the success that has crowned their undertaking. I cannot find in this statute any authority for holding that to be a crime which is fostered by both usage and law,—a business that in fact pays toll and tribute, under lawful regulations, to the Little Kanawha Navigation Company, for the privilege of floating rafts, logs, timber, boats, and vessels in that river, and through the locks of that company,—the very things charged in this count as obstructing and impeding the navigation of the river mentioned. Locks and dams are themselves obstructions to the navigation of rivers for certain articles of commerce, and yet they are absolutely essential for the full and convenient use of our waters for general purposes. If the position contended for by the district attorney in connection with this fourth count is correct, why cannot it with equal force be maintained that the structures of the Little Kanawha Navigation Company are also, under

the statute, obstructions to the navigable capacity of that river? If the answer is that they have been "affirmatively authorized by law," does not the reply made suggest that the same laws permit the use of the river for all purposes necessarily included in the business for the carrying on of which they require the payment of a toll? I do not say that congress cannot prohibit the casting and placing of rafts, logs, timber, cross-ties, barges, and boats, loose and adrift, in the manner described in this fourth count, into the navigable rivers of the United States, but I do find that congress has not as yet so legislated; and therefore I hold that, admitting the matters of fact alleged against the defendants in this count to be true, they do not, in point of law, constitute them guilty of an offense, and so as to the fourth count the defendants' demurrer is sustained.

The fifth count is so indefinite that it will not be seriously contended that defendants should be required to plead to it. It gives neither place nor circumstance, and is too vague and general. It charges the defendants with unlawfully creating an obstruction, not affirmatively authorized by law, to the navigable capacity of the Little Kanawha river; but it gives not the slightest notice or description of the acts done by them which they are called upon to defend. For reasons that I have already given, I hold this count bad.

The sixth count is based on that part of the seventh section immediately preceding the proviso thereto, and charges the defendants with unlawfully altering and modifying the course, location, condition, and capacity of the channel of the Little Kanawha river, a navigable river of the United States, by excavating, and by filling, the bank, bottom, bed, shore, and channel of the river, as prohibited in section 7, and by doing all the things mentioned in section 6 as not being lawful to do, and in other manners not described, without the same having been in any wise approved and authorized by the secretary of war. The position assumed by counsel for defendants—that this count charges in mass every offense suggested by the statute; that it combines all the offenses mentioned in section 6, and part of those in section 7—cannot be maintained. The charge is plainly set forth that the defendants did "unlawfully alter and modify the course, location, condition, and capacity of the channel of the" Little Kanawha river, the doing of which, under certain circumstances, is made an offense by the seventh section. The many ways in and by which "the altering and modifying" was done, as alleged in this count, constitute the mass of charges referred to. The district attorney claims that the casting, throwing, etc., and the depositing, placing, etc., of the things mentioned in section 6, constitute such altering or modifying of the course, location, condition, or capacity of the channel of the river as is made unlawful by the portion of the seventh section under which this count is drawn. My judgment is that congress did not so intend, and I construe the statute otherwise. I cannot reach the conclusion that congress authorized the secretary of war to approve and authorize the casting of ballast, stone, earth, rubbish, and filth in any of the navigable waters of the country, in such a manner as to alter or modify the course, location, and capacity of the channel of such waters, as I

would be compelled to if I acquiesced in the position contended for by the attorney for the United States. By the latter clause of the proviso to section 6, the secretary of war is authorized to grant a permit for depositing any of the substances mentioned in section 6 in a place designated by him; not where it will alter the course of the channel of the navigable waters of the United States, but where "navigation will not be obstructed thereby." I think that the excavating and filling, altering and modifying of the course, location, and capacity of the channel, as described in section 7, must have reference to such permanent construction as tends to obstruct navigation, the building of which must have the approval and authorization of the secretary of war. This count charges the defendants with excavating the bank, bottom, shore, side, bed, and channel of the Little Kanawha river, and with filling the side, bed, shore, bank, and channel of the same, and thereby unlawfully altering and modifying the course, location, condition, and capacity of the channel of the river. This constitutes one of the offenses created by the seventh section, and, if there was sufficient clearness of allegation as to the place where the excavation was made, or the filling was done, and the channel was changed, the count would be good, treating that which relates to the substances mentioned in the sixth section as unnecessary detail and as surplusage. But for reasons I have already given in connection with the other counts of this indictment, I must hold this one bad. If the defendants are to be required to answer to the charge of excavating the banks of the river and filling the bed and channel of the same, the place or places where it is alleged they so excavated and filled should be given with more definiteness than that it was done "at the district of West Virginia."

The indictment, and each count thereof, will be quashed.