UNITED STATES OF AMERICA

v.

ESSO STANDARD OIL COMPANY OF PUERTO RICO, Appellant

No. 15,790

United States Court of Appeals

Third Circuit

Argued January 30, 1967

Filed March 27, 1967

See, also, 375 F.2d 621

JOHN D. MARSH, ESQ. (YOUNG, ISHERWOOD and MARSH), Christiansted, St. Croix, Virgin Islands, *for appellant*

ALMERIC L. CHRISTIAN, ESQ., United States Attorney, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before STALEY, *Chief Judge*, and MARIS and FREEDMAN, *Circuit Judges*

STALEY, *Chief Judge*

## OPINION OF THE COURT

Esso Standard Oil Company of Puerto Rico (hereinafter "Esso") was convicted on two charges of the offense of discharging refuse into navigable waters in violation of § 13 of the Rivers and Harbors Act, 33 U.S.C.A. § 407 (1957), and was fined $1,000 for each violation. The trial judge, sitting without a jury, found that on two occasions,

150

Esso had caused liquid petroleum products to be spilled upon its land, that these products flowed over the ground into the ocean, and that such conduct violated § 13. Esso urged that its conduct was not within the acts proscribed by § 13, and that there was insufficient evidence before the trial judge to support the convictions.

■ Viewing the evidence in the light most favorable to the Government, as we must, the following facts were established. Esso operated a "tank farm" near Frederiksted, St. Croix. The tank farm consisted of storage tanks and pumps and was used by Esso as a distribution station for "white" petroleum products, i.e., diesel fuel, kerosene, and regular and premium gasoline. The tank farm was located close to the shoreline. Between Esso's plant and the shore was a dirt road and a concrete apron belonging to a local rum distillery. Upon this apron were pumps used by the distillery for molasses and "navy special," a dark fuel oil. At the time of the events in question, Esso employed one Louis Soto as plant supervisor, and this person was in exclusive charge of the loading operations conducted at the Esso plant.

During the latter part of December, 1964 some of the persons living along the coast near Esso's tank farm complained to the Coast Guard that Esso was causing petroleum pollution in the adjoining coastal waters. On December 23, 1964, one of the neighbors, Admiral John H. Schultz (Ret.) called the Coast Guard to complain of renewed pollution, and asked that one of the Coast Guardsmen meet him at the Esso tank farm. Then Admiral Schultz and Mr. Theodore Smejkal, operator of a nearby resort, went over to Esso's establishment.

At the trial, both Admiral Schultz and Mr. Smejkal testified that they observed and photographed heavy spillage of a clear, irridescent petroleum product at the Esso tank farm. Their pictures, introduced into evidence, show

this spillage running from the area where Esso's pumps are located, across the road in front of Esso's establishment, down the side of the distillery's apron, and through a hole cut in the curbing of the apron and thence to the rocks below and the sea. The oil remaining on the road, the apron and in pools between the rocks below the apron was described as clear. Admiral Schultz testified that when he said to the Esso attendant that the attendant had spilled kerosene, the attendant replied, "No, it is diesel oil."

A member of the Coast Guard testified that he had responded to the various complaints, and had visited the Esso tank farm pursuant thereto to try to correct the problem. While the Coast Guardsman was not able to verify the pollution of the 23rd of December because he arrived too late in the day, he did testify that there was evidence of pollution about the premises and the shore when he visited the tank farm on the 29th of December.

On the basis of the testimony before him, the district judge denied Esso's motions for acquittal and found Esso guilty on both counts. A motion for a new trial was denied, and sentences were imposed.

■ Esso argued in the district court and on appeal that it could not have violated § 13 of the Rivers and Harbors Act as a matter of law. Section 13 provides as follows:

"Deposit of refuse in navigable waters generally.

"It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any

navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed * * *."

Section 16 of the Act, 33 U.S.C.A. § 411 (1957), makes violation of § 13 a misdemeanor punishable, in the case of a corporation, by a fine not to exceed $2500 with one half of the fine to be paid to the person giving information leading to the conviction. These sections are made applicable to the Virgin Islands by 48 U.S.C. § 1399 (1952).

■ Esso urges that the remoteness of its activities from the shoreline isolates it from liability under the Act. As Esso points out, § 13 creates two separate offenses: (1) the discharge of refuse into any navigable water, and (2) the deposit of material on the bank of navigable water where it is likely that the material will be washed into the water and impede or obstruct navigation. United States v. Ballard Oil Co., 195 F.2d 369, 370 (C.A.2, 1952); La Merced, 84 F.2d 444, 445 (C.A.9, 1936). Both Esso and the United States agreed here that Esso did not violate the second clause because there is no suggestion that navigation was impeded or obstructed. Esso further argues that the first clause of § 13 contemplates only "direct" discharges of refuse into navigable water, and that therefore the evidence showing the remote spillage of a liquid petroleum product and the flow of this liquid over a road and another company's property and into the sea does not establish a violation of the first clause of § 13.

■ We cannot agree with Esso's construction of § 13. Just last year the Supreme Court, holding that 100-octane gasoline was refuse within § 13, announced that § 13 must not be given a "narrow, cramped reading" to defeat its purposes. Unites States v. Standard Oil Co., 384 U.S. 224, 226 (1966). See United States v. Republic Steel Corp., 362 U.S. 482, 491 (1960).

■ It seems clear to us that the first clause of § 13 does reach "indirect" deposits of refuse in navigable water. This first clause expressly proscribes the deposit of refuse into non-navigable water where the refuse will in turn wash into navigable water. That other "indirect" deposits are within the contemplation of the first clause is clearly implied by the express exemption of one type of indirect deposit—the collection and discharge of sewage, i.e., "refuse * * * flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water * * * or tributary of any navigable water * * *." United States v. Republic Steel Corp., 362 U.S. at 490–491. Here, though Esso did not run a pipe to the water's edge and discharge petroleum products directly into the sea, Esso's discharge of the oil was in such close proximity to the sea that the oil flowed there by gravity alone. While there may be cases where the defense of remoteness would be available, this is not such a case. To accept the construction urged upon us by Esso would indeed constitute the adoption of a technical or "cramped" reading of the section contrary to the mandate of the Supreme Court, supra.

Our interpretation of § 13 finds support in the Ballard Oil case, supra. In Ballard Oil, the court affirmed a conviction of the oil company where the defendant pumped too much oil into tanks on the shore, the oil overflowed into waste pipes and was discharged into the river. The defendant was prosecuted under the first clause of § 13. The Second Circuit held that the sole reason for the overlap between the first and second clauses of § 13 was that the second clause reached materials deposited on shore "which gravity alone will not carry into a stream." 195 F.2d at 370–371. Thus in Ballard Oil the oil pollution accomplished "indirectly" through the agency of a waste pipe constituted a violation of § 13.

Esso also argues that the Government's evidence was insufficient to support a criminal conviction. The findings of fact by the trial judge are supported by adequate testimony and we will not interfere with them on appeal. Government of the Virgin Islands v. DuBoyce, 4 V.I. 107, 267 F.2d 512 (C.A.3, 1959).