**UNITED STATES of America,**

v.

**INTERLAKE STEEL CORPORATION,**
a corporation.

**No. 68 CR 777.**

United States District Court
N. D. Illinois, E. D.

March 27, 1969.

As Modified May 14, 1969.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for plaintiff.

Henry L. Pitts and W. Gerald Thursby, Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS THE INFORMATION

ROBSON, District Judge.

The information in this criminal prosecution charges the defendant, Interlake Steel Corporation, with discharging iron particles and an oily substance into the Little Calumet River on June 3, 1968, in violation of Section 13 of the Rivers and Harbors Act of 1899. 33 U.S.C. § 407. The defendant has moved

this court to dismiss the information on three grounds. For the reasons set forth below, this court is of the opinion that the motion should be denied.

The defendant first contends that the information is fatally defective because it fails to allege that this prosecution was undertaken at the request of the Secretary of the Army, the United States Corps of Engineers, or any other officer authorized to do so under the provision of Section 17 of the Act. 33 U.S.C. § 413. Section 17 directs the United States Attorney to vigorously prosecute violators of the Act whenever requested to do so by certain named federal officials and agencies whose responsibility it is to enforce the Act. The defendant contends that the United States Attorney is powerless to enforce the criminal sanctions of the Act absent a request by one of the officials or agencies enumerated in Section 17.

 The Rivers and Harbors Act of 1890, the predecessor of the statute here under consideration, contained a provision substantially similar to Section 17. Section 11 of the original Act conferred a duty upon certain officers and agencies of the United States to enforce the Rivers and Harbors Act and, further, to give information of any violations to the United States Attorney.[1] Soon after the enactment of this legislation, the United States District Attorney initiated a prosecution charging that defendant with casting rubbish into a river, in violation of the Rivers and Harbors Act. United States v. Burns, 54 F. 351 (C.C.W.Va. 1893). The defendant there attacked the indictment on the ground that the United States District Attorney did not have authority to prosecute alleged violations of the Rivers and Harbors Act unless the information leading to the prosecution was furnished by an officer or agency authorized to do so by Section 11. The court rejected the defendant's interpretation of this provision, substantially similar to the provision before this court. In Burns, the court reason-

ed that the provision places upon certain persons and agencies the duty to give information to the United States District Attorney and request prosecutions as part of their responsibility of enforcing the Act. Theoretically, they are in the best position to detect infractions of the law. However, the court explicitly ruled that where information is not given to the United States District Attorney by those duty bound to do so under the Act, the right and duty of the federal prosecuting officer, and of the grand jury, "to initiate proceedings in the manner usual to criminal cases, is not affected, and remains as heretofore." United States v. Burns, supra, at 355. This decision stands unchallenged and its rationale is applicable to Section 17.

 The court notes that in its response, the Government indicates that the information leading to this prosecution was furnished by the United States Coast Guard, a federal agency vested with the duty of protecting the navigable waters of the United States. Although the Coast Guard is not among those agencies fixed with the responsibility of enforcing the Rivers and Harbors Act by Section 17, enforceability of the Act clearly should not rest upon the fortuity of which particular federal agency, with jurisdiction over the navigable waters of the United States, detects a violation and reports it to the United States Attorney. Furthermore, it appears that in at least one recent successful prosecution under Section 13, detection and prosecutorial information was provided by the Coast Guard. United States v. Esso Standard Oil Company of Puerto Rico, 375 F.2d 621 (3rd Cir. 1967). For these reasons, this court finds that the information alleges the requisite elements and essential facts of a violation of Section 11 of the Rivers and Harbors Act of 1899. Rule 7(c), Federal Rules of Criminal Procedure.

 Secondly, it is asserted that the information is fatally defective because

---

1. Then called the United States District Attorney.

it fails to allege that the defendant violated the Act willfully, intentionally, knowingly or negligently. Section 16 does not require any element of *scienter* be shown for conviction of a substantive Section 13 offense, although knowledge is a required element of an aiding and abetting offense.[2] Depositing refuse in navigable waters is the *malum prohibitum*[3] constituting a violation of Section 13. Even indirect discharges of refuse into navigable waters have been held to violate the Act. United States v. Esso Standard Oil Company of Puerto Rico, *supra;* United States v. Ballard Oil Company of Hartford, Inc., 195 F.2d 369 (2d Cir. 1952). In one recent decision under this statute, the parties even stipulated, for purposes of a contested motion to dismiss the indictment on other grounds, that gasoline was discharged into a river because a shut-off valve at dockside had been "accidentally" left open. United States v. Standard Oil Company, 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966). The Supreme Court was presented only with the issue of whether valuable gasoline constituted "refuse" under Section 13. The court noted that it was not ruling "on the question as to what *scienter* requirement the Act imposes * * *." However, this court considers it significant that this basic question was not presented. Therefore, in the absence of any statutory or decisional requirement of a showing of *scienter* in a prosecution brought under a seventy-year old statute, this court finds no basis for reading such a requirement into the Act at this late date.

█ The defendant calls to this court's attention the Regulations issued by the Corps of Engineers which, it contends, are entitled to "great weight" in interpreting the Act, and impose a requirement of *scienter*. See United States v.

Republic Steel Corporation, 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). In *Republic Steel*, the Supreme Court ruled that particles of industrial waste suspended in water come within the prohibitions of Section 13. In reaching this conclusion, the court observed that "[a]ny doubts are resolved by a consistent administrative construction which refused to give immunity to industrial wastes resulting in the deposit of solids in the very river in question." The "administrative construction" of which the court took judicial notice was that given by the Corps of Engineers which had, over a period of 50 years, made administrative findings and rulings concerning such deposits in the Little Calumet River. In a footnote, the Supreme Court observed that although such findings were entitled to "great weight," they were "not conclusive of course." United States v. Republic Steel Corporation, *supra,* at 490, note 5, 80 S.Ct. 884. The Regulations invoked here by the defendant state that it is the long-standing and established policy of the Corps of Engineers not to take any action where the alleged violation is "minor, unintentional or accidental" and, "as a general rule," not to recommend prosecution where the alleged violation is "trivial, apparently unpremeditated and results in no material public injury." Prosecution is recommended "in all cases of willful or intentional violations." 33 C.F.R. §§ 209.395 and 209.400. These policy statements are not conclusively binding on the Corps of Engineers in their own administrative proceedings, and certainly do not establish a basis for requiring the Government to allege in its information that the violation was not "minor, unintentional, nor accidental." For these reasons, this court concludes that the information is not fatally defective be-

---

2. "Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of * * * [section] 407 * * * of this title shall be guilty of a misdemeanor * * *" 33 U.S.C. § 411.

3. " * * * [A]n act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law. * * * Contrasted with *malum in se*." Black's Law Dictionary 1112 (4th ed. 1957).

cause it does not contain an allegation regarding *scienter*.

 As the third and final ground for dismissing this prosecution, the defendant asserts that the information fails to state an offense against the United States. The defendant contends that Section 13 of the Rivers and Harbors Act is superceded and modified by the provisions of the Water Quality Act of 1965. 33 U.S.C.A. § 466 *et seq*. The latter statute provides that the Secretary of the Interior shall set water quality criteria for the interstate waters of the nation either by approving water quality standards submitted by a State or by his own regulation. 33 U.S.C.A. § 466g. On January 27, 1968, the Secretary of the Interior approved the Illinois Sanitary Water Board Rules and Regulations SWB–15. The defendant contends that Rule 1.04, applicable to the Little Calumet River, establishes permissible limits of solids, chemical and bacterial constituents in industrial discharges. This court notes, however, that Rule 1.04 bars discharges that will form bottom deposits that may be harmful to biota. The Rule also bars discharges of oily substances in unsightly or deleterious amounts adversely affecting public or private recreational development. The Rule further prohibits industrial discharges which are toxic or harmful to human, animal or aquatic life. In its Statement of Policy, the Illinois Sanitary Water Board declares that it is " \* \* \* the public policy of this State to provide that no waste be discharged into any waters of the State without first being given the degree of treatment necessary to prevent the pollution of such waters." It is the defendant's position that "the Water Quality Act is meaningless if one arm of the federal government can commence criminal proceedings and get a conviction while the defendant is all the while in compliance with the modern, up-to-date standards for water pollution control set by another arm of government." This court observes, without so ruling, that the conduct complained of by the United States Attorney appears to also be in violation with the announced quality standards of the Illinois State Water Board. However, this court does rule that the Water Quality Act of 1965 cannot be held to supercede or emasculate the prohibitions of the Rivers and Harbors Act. The legislative purpose of the Water Quality Act was to initiate programs designed to elicit state, municipal and industrial co-operation in the elimination or reduction of water pollution, which imperils our "single greatest resource." 1965 U.S. Code Cong. & Adm. News, pp. 3313–3328. The defendant's interpretation of this statute, which this court cannot accept, would relax the prohibitions against discharging refuse into the nation's waters as proscribed by the Rivers and Harbors Act, by invoking legislation clearly intended to secure *higher* water quality standards. The statute itself negates such an interpretation. Standards set by a state agency must be consistent with any applicable water quality standards established pursuant to current law within a given river, lake, etc. 33 U.S.C.A. § 466a(c) (2) (A). Discharge of matter prohibited by the Rivers and Harbors Act cannot be condoned under the standards set by a state agency pursuant to the Water Quality Act. The defendant asks this court to "reach an accommodation" between the two statutes, taking the position that the Supreme Court's decision in United States v. Republic Steel Corp., *supra*, which held that a discharge into the Little Calumet River similar to the one alleged in the instant information violated the Rivers and Harbors Act, cannot stand in light of the Water Quality Act. In order to "accommodate" the defendant, this court would be required to repeal an Act of Congress and reverse a decision of the Supreme Court. Nowhere in the Water Quality Act and its legislative history can this court find any congressional intent to repeal or modify the Rivers and Harbors Act. To the contrary, the Water Pollution Control Act of 1956, to which the Water Quality Act of 1965 is an amendment, states that 33 U.S.C. §§ 466–466k shall not be con-

strued as "affecting or impairing the provisions of * * * [section] 407 * * * of this title," i. e., Section 13 of the Rivers and Harbors Act. 33 U.S.C. § 466k. For these reasons, this court finds that the information states an offense against the United States.

It is therefore ordered that the motion to dismiss the information be, and it is hereby denied.