**UNITED STATES of America,**
**Plaintiff,**

v.

**CONSOLIDATION COAL COMPANY,**
**a corporation, Defendant.**

**Civ. A. No. 72–31–F.**

United States District Court,
N. D. West Virginia,
Fairmont Division.

Jan. 11, 1973.

Paul C. Camilletti, U. S. Atty., James F. Companion, Asst. U. S. Atty., Wheeling, W. Va., for plaintiff.

Furbee, Amos, Webb & Critchfield, Fairmont, W. Va., and Rose, Schmidt & Dixon, Pittsburgh, Pa., for defendant.

## MEMORANDUM DECISION AND ORDER

CHRISTIE, Chief Judge:

The United States of America has filed this civil action seeking a permanent injunction against defendant's continued discharge of effluent wastes into a navigable water of the United States, in violation of Section 13 of the Rivers and Harbors Act of 1899, 33 U.S.C.A. § 407, commonly known as the Refuse Act. The government alleges that the defendant, in the operation of its Number 93 Mine located in Marion County, West Virginia, has been regularly discharging effluent wastes into Pharoah's Run, a non-navigable tributary of the Monongahela River, and that such wastes flow and are washed into the Monongahela River, a navigable water.

The defendant moves for dismissal of the action and contends in support of its motion, as a preliminary matter, that the Refuse Act is a navigation statute and not a pollution statute, that it was never intended to apply to or control the discharge of industrial wastes and that, absent an allegation of some obstruction or impediment to navigation, it is inapplicable to the conduct which the government seeks to enjoin.

### I

In regard to this issue, the United States Supreme Court has twice indicated that the Refuse Act should be given a broad and liberal interpretation. See United States v. Republic Steel Corp., 362 U.S. 482, 491, 80 S.Ct. 884, 890, 4 L.Ed.2d 903 (1960), where the Court said:

> "We read the 1899 Act charitably in light of the purpose to be served. The philosophy of the statement of Mr. Justice Holmes in New Jersey v. New York, 283 U.S. 336, 342, 51 S.Ct. 478, 75 L.Ed. 1104, that 'A river is more than an amenity, it is a treasure,' forbids a narrow, cramped reading either of § 13 or of § 10."

Again, in United States v. Standard Oil Co., 384 U.S. 224 at p. 226, 86 S.Ct. 1427 at p. 1428, 16 L.Ed.2d 492 (1966), the Supreme Court stated:

> "(T)he history of this provision and of related legislation dealing with our free-flowing rivers 'forbids a narrow, cramped reading' of § 13."

Section 13 of the Refuse Act provides in pertinent part that:

> "It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited . . . from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets

and sewers and passing therefrom in a liquid state, into any navigable water° of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water . . . whereby navigation shall or may be impeded or obstructed: *Provided* . . . That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waers . . . ."

 Two separate offenses are created by this section: (1) the discharge of any refuse matter of any kind or description whatever into any navigable water or tributary thereof, and (2) the deposit of material on the bank of any navigable water or on the bank of any tributary thereof where it is likely the material will be washed into such navigable water and impede or obstruct navigation. United States v. Esso Standard Oil Company of Puerto Rico, 375 F.2d 621, 623 (3rd Cir. 1967); United States v. Ballard Oil Co. of Hartford, Inc., 195 F.2d 369, 370 (2d Cir. 1952); La Merced, 84 F.2d 444, 445 (9th Cir. 1936). The government has charged defendant with the discharge of effluent wastes including but not limited to acid, iron, sulfates, manganese and other dissolved and undissolved solids, in violation of the first clause of Section 13. The defendant would have the court interpret this clause to be applicable only if there is a resulting impediment or obstruction to navigation. However, such an interpretation must be rejected as a "narrow, cramped reading" of the statute contrary to the rationale of the Supreme Court in *Republic Steel* and *Standard Oil*. On the other hand, it seems clear from a literal reading of the clause that it extends to the discharge of any refuse matter of any kind into a navigable water or tributary thereof *regardless* of its effect on navigation. See United States v. Pennsylvania Industrial Chemical Corp., 461 F.2d 468 (3rd Cir. 1972); United States v. Esso Standard Oil Co. of Puerto Rico, supra; United States v. Ballard Oil Co. of Hartford, supra; *La Merced,* supra. Defendant's argument that "refuse matter," as used in the statute, does not encompass the discharge of acid, iron, sulfates, manganese and other dissolved and undissolved solids is likewise rejected.

## II

The next issue which concerns us is whether, given a violation of Section 13 of the Refuse Act, the respective remedies provided by Congress for such a violation are exclusive and do not allow for the injunctive relief sought by the government. The relevant provisions are found in Section 16 of the Act, 33 U.S.C.A. § 411, and provide:

"Every . . . corporation that shall violate . . . the provisions of Section 407 . . . of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500, nor less than $500 . . . ."

The defendant predictably argues that this penalty provision is exclusive and that there are no stipulations in the Act which provide for injunctive relief to enforce the provisions of Section 13. It is pointed out that Section 12 of the Act, 33 U.S.C.A. § 406, which provides penalties for violations of Section 10, 33 U.S.C.A. § 403, expressly authorizes the injunctive remedy. Defendant argues, therefore, that the lack of such an authorization in Section 16 should be taken to mean that Congress did not intend the United States to be able to obtain

civil injunctive relief as a remedy for a violation of Section 13. A similar argument was offered before the United States Supreme Court in Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). There the petitioners argued that Section 16 provided exclusive criminal penalties for a violation of Section 15 of the Refuse Act. In rejecting this argument, the Court stated at pp. 201–202, 88 S.Ct. at p. 386:

"Our decisions have established, too, the general rule that the United States may sue to protect its interests. Cotton v. United States, [52 U.S. 229], 11 How. 229, [13 L.Ed. 675] (1851); United States v. San Jacinto Tin Co., 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747 (1888); Sanitary District v. United States, . . . [266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925)]. This rule is not necessarily inapplicable when the particular governmental interest sought to be protected is expressed in a statute carrying criminal penalties for its violation."

Also in holding that injunctive relief was available in United States v. Republic Steel Corp., supra, the Court states at p. 492 of 362 U.S., at p. 890 of 80 S.Ct.:

"Congress has legislated and made its purpose clear; it has provided enough federal law in § 10 from which appropriate remedies may be fashioned even though they rest on inferences. Otherwise we impute to Congress a futility inconsistent with the great design of this legislation."

■ Although *Republic Steel* concerned Section 10 of the Refuse Act and *Wyandotte* involved the remedies available for a violation of Section 15, both cases clearly favored injunctive relief. Moreover, other recent federal court decisions have held that injunctive relief for alleged violations of Section 13 is proper. See Connecticut Action Now, Inc. v. Roberts Plating Company, Inc., 457 F.2d 81 (2d Cir. 1972); United States v. Armco Steel Corporation, 333

F.Supp. 1073 (S.D.Texas 1971); Bass Anglers Sportsman's Society of America v. Scholze Tannery, Inc., 329 F.Supp. 339 (E.D.Tenn.1971); United States v. Florida Power and Light Company, 311 F.Supp. 1391 (S.D.Fla.1970). Accordingly, this court concludes that injunctive relief upon an action brought by the government for a violation of Section 13 of the Refuse Act may properly be granted.

### III

We finally concern ourselves with what effect, if any, the Federal Water Pollution Control Act Amendments of 1972, P.L. 92–500, has upon the appropriate provisions of the Refuse Act. Section 4 of the 1972 Amendments provides:

*"Savings Provision*

"(a) No suit, action, or other proceeding lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity or in relation to the discharge of his official duties under the Federal Water Pollution Control Act as in effect immediately prior to the date of enactment of this Act shall abate by reason of the taking effect of the amendment made by section 2 of this Act. The court may, on its own motion or that of any party made at any time within twelve months after such taking effect, allow the same to be maintained by or against the Administrator or such officer or employee."

Section 402(k) of the Amendments provides:

". . . Until December 31, 1974, in any case where a permit for a discharge has been applied for pursuant to this section, but final administrative disposition of such application has not been made, such discharge shall not be a violation of . . . the Act of March 3, 1899, unless the

Administrator or other plaintiff proves that final administrative disposition of such application has not been made because of the failure of the applicant to furnish information reasonably required or requested in order to process the application."[1]

■ Although the savings provisions of the 1972 Amendments refer only to the Federal Water Pollution Control Act as it existed immediately prior to the enactment of the Amendments, it seems clear from statements made upon consideration of the Amendments,[2] their gen-

1. Section 402(a)(5) of the Amendments provides in pertinent part:

"Each application for a permit under section 13 of the Act of March 3, 1899, pending on the date of enactment of this Act shall be deemed to be an application for a permit under this section."

2. From Congressional Record, October 4, 1972, S. 16882, 16883:

"Mr. Griffin. Mr. President, I take this time for the purpose of establishing a legislative history.

After reviewing the conference report on S. 2770, I became deeply concerned that one provision in the conference agreement might adversely affect a number of pending lawsuits brought under the Refuse Act of 1899.

One such suit is now pending against the Reserve Mining Co. of Silver Bay, Minn., a company which has been dumping 67,000 tons of pollutants daily into Lake Superior.

The provision I refer to is section 402(k), which provides in part that—

'Until December 31, 1974, in any case where a permit has been applied for pursuant to this section, but final administrative disposition of such application has not been made, such discharge shall not be a violation of (1) section 301, 306, or 402 of the Act, or (2) section 13 of the Act of March 3, 1899 . . . . .'

I am also aware of section 4 of the bill, a provision to preserve pending Federal suits.

However, when these provisions are read together, it is not altogether clear what effect is intended with respect to pending Federal Court suits against polluters violating the Refuse Act of 1899.

If section 402(k) were read as having retroactive effect, then about 170 Federal suits filed against polluters prior to the date of enactment of the bill, including the Reserve case, could be dismissed.

It is true that the suit against Reserve Mining is also based upon violations of water quality standards and the allegation that such dumping constitutes a public nuisance. However, the strongest part of the case is based on the Refuse Act.

Furthermore, the burden of proving a Refuse Act violation is less onerous than the burden of proving a violation of water quality standards.

During the last 2 years there have been some 300 criminal convictions under section 13 of the Refuse Act and over 120 civil actions most of which resulted in the defendants either stopping the dumping or agreeing to institute pollution control programs. On the other hand, it is my understanding there have been only a handfull of prosecutions for violation of water quality standards since the Federal Water Pollution Control Act was enacted.

In view of this—a fact recognized by the conferees—it is inconceivable that the Senate would want to emasculate the best available enforcement device now available—the Refuse Act—and legislatively dismiss suits pending under it.

Accordingly, Mr. President, it is essential that any possible ambiguity be cleared up so that the legislative history will leave no doubt about the intent of the conferees and the Members of this body."

. . . . .

"Mr. Griffin. I wonder if I might address my question to the distinguished manager of the bill on this point.

Mr. Muskie. Yes, indeed. I appreciate having this point raised by the Senator from Michigan, I wish to put my answer in this form.

Section 4(a) of the conference report is an identical provision to that which appeared in the House bill.

Section 402(k) of the conference report is similar, although not identical, to section 402(l) of the House bill.

No question has even been raised up to this point as to the relationship of these two sections. The gentleman's question is the first indication that anyone has ever considered that there was an ambiguity in the two provisions.

eral legislative background,[3] and the fact that the Refuse Act was not explicitly repealed, that it was the intent of Congress that the provisions of the Refuse Act remain in effect as part of its overall water pollution control scheme.

Section 4 provides and I quote the relevant words pertaining to the Refuse Act:

'No suit, action, or other proceeding lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity . . . shall abate by reason of the taking effect of the amendment made by section 2 of this Act.'

Without any question it was the intent of the conferees that this provision include enforcement actions brought under the Refuse Act, the Federal Water Pollution Control Act, and any other acts of Congress.

I hope and trust that nothing said on this floor or elsewhere would lead anyone to believe that section 4 is anything but totally clear as to its meaning and intent."

From Congressional Record, October 4, 1972, H. 9123, 9124:

"Mr. Dingell. Mr. Speaker, I rise in support of this conference report, although I have some misgivings concerning certain features of the report, as I will note in more detail.

. . . . .

At this point I would like to direct a question to the chairman of the committee with regard to section 402(k) of the bill and section 4(a) of the bill.

It is my understanding that section 402(k) of the bill would grant to any discharger of waste into our Nation's water total immunity from prosecution under the Federal Water Pollution Control Act and under the Refuse Act until the end of 1974. Of course, to obtain this immunity, the polluter would have to file an application for permit, and that application must still be pending.

I am deeply concerned what effect this provision will have on pending law suits and other administrative actions which EPA has initiated over the past 2 years. In particular, I am concerned about the effect of this provision on the Reserve Mining case. The gentleman knows that I have corresponded with him on this issue in the last few days in the full belief that the gentleman and other members of the conference never intended to halt these cases until the end of 1974. I would, therefore, appreciate it if the gentleman would relieve my mind and those of many citizens of this Nation and the Great Lakes by assuring me that it is the intention of the House conferees that the immunity granted under section 402(k) is applicable solely to dischargers who are not on the date of enactment of this bill being prosecuted by the Government, either civilly, criminally, or administratively, under this law or under the Refuse Act. I understand this to be the case because of the language of section 4(a) of the bill entitled 'Savings Provision,' and because the bill, in fact, does not repeal the Refuse Act of 1899.

Does the gentleman concur with my statement?

Mr. Wright. Will the gentleman yield?

Mr. Dingell. I yield to my good friend from Texas (Mr. Wright).

Mr. Wright. Mr. Speaker, section 4(a) of the conference report is an identical provision to that which appeared in the House bill.

Section 402(k) of the conference report is similar although not identical, to section 402(l) of the House bill.

No question has ever been raised up to this point as to the relationship of these two sections. The gentleman's question is the first indication that anyone has ever considered that there was an ambiguity in the two provisions.

Section 4 provides and I quote the relevant words pertaining to the Refuse Act:

'No suit, action, or other proceeding lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity . . . shall abate by reason of the taking effect of the amendment made by section 2 of this Act.'

Without any question it was the intent of the conferees that this provision include enforcement actions brought under the Refuse Act, the Federal Water Pollution Control Act, and any other acts of Congress.

I hope and trust that nothing said on this floor or elsewhere would lead anyone to believe that section 4 is anything but totally clear as to its meaning and intent."

3. U.S.Code Congressional and Administrative News, Pamphlet 10, November 10, 1972, p. 5288 et seq.

Defendant states by affidavit, dated November 14, 1972, that it made initial application for a discharge permit on June 29, 1971, and filed a second part of the application on September 30, 1971, but through no fault of its own, the permit application has not been acted upon. Under 33 C.F.R. 209.-131(d)(4), all discharges to which the Refuse Act is applicable are unlawful unless authorized by a permit. The mere filing of an application requesting permission to discharge or deposit into navigable waters or tributaries thereof do not preclude legal action for Refuse Act violations. Nevertheless, it is submitted by defendant that since Section 402(k) of the 1972 Amendments supersedes this regulation, this civil action is rendered moot until final administrative action has been taken upon the pending permit application. Thus, defendant urges the court to apply Section 402(k) to pending litigation so that even though Section 13 of the Refuse Act may be saved, it is only with respect to current prosecutions for which a defendant has no permit application pending. All other prosecutions would be dismissed until there is a final administrative action taken on permit applications. Although there may be some ambiguity surrounding the application of 402(k), we do not believe it was intended to have a retroactive effect upon pending suits and actions. Rather, it appears from the legislative background relating to passage of the 1972 Amendments, as well as the absence of explicit language which dismisses pending litigation, that it was the intent of Congress that 402(k) should have a prospective effect only and was not intended to apply to pending litigation (See footnote 2).

For the reasons above shown, this Court concludes that it has jurisdiction to adjudicate the present litigation and to issue appropriate relief therein. It is accordingly hereby

Ordered that the defendant's motion to dismiss be, and it is, hereby overruled.