**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**ROHM & HAAS COMPANY and Rohm & Haas of Texas, Incorporated,
Defendants-Appellants.**

**No. 73-1727.**

United States Court of Appeals,
Fifth Circuit.

Sept. 9, 1974.
Rehearing Denied Oct. 30, 1974.

---

B. D. McKinney, Larry B. Feldcamp, Houston, Tex., for defendants-appellants.

Anthony J. P. Farris, U. S. Atty., Steve Rice, James R. Gough, Asst. U. S. Attys., Houston, Tex., John L. Hills, Atty., Kent Frizzell, Asst. Atty. Gen., Carl Strass, Robert L. Klarquist, Attys., Dept. of Justice, Washington, D. C.,

**170**

Jack Shepherd, Chief Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before TUTTLE, GEWIN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This is a continuous discharge pollution case filed by the Government under the 1899 Refuse Act against Rohm and Haas Company, which has a large chemical manufacturing plant with a single outfall through which its treated waste water goes into the Houston Ship Channel. The District Court entered an injunctive order which set certain limitations upon the discharge by the Company of various pollutants, such as ammonia, chemical oxygen demand, cyanide, chromium, nickel, oil and grease, into the Houston Ship Channel, and totally enjoined the barging of such wastes to sea. 353 F.Supp. 993 (S.D.Tex.1973). The injunction has been stayed pending this appeal which raises difficult issues as to the relationship between the old Refuse Act and the new Water Pollution Control Act.

On appeal the Company argues (1) that the Federal Water Pollution Control Act Amendments of 1972 prevent prosecution of this Refuse Act suit; (2) that the doctrine of primary jurisdiction should be applied and this case remanded to the Environmental Protection Agency for the initial determination of effluent limitations; (3) that the Refuse Act does not confer jurisdiction over waste disposal on the high seas; (4) that the District Court's order is deficient under Federal Rules of Civil Procedure 52(a) and 65(d); and (5) that even if the Federal Water Pollution Control Act Amendments do not bar this action, they provide the proper legal standard to be applied in establishing effluent limitations for the Company's plant.

Except for modifying the injunction so that it will not override subsequent agency action under the new Act, and striking that portion of the injunction that applies to barging wastes to sea, which we find outside the scope of the Refuse Act, we affirm the action of the District Court. We discuss the arguments of appellant seriatim.

I.

Rohm and Haas argues that it cannot be in violation of the Refuse Act, 33 U.S.C.A. § 407, because it has applied for a permit to discharge wastes into the Houston Ship Channel, and section 402(k) of the Federal Water Pollution Control Act Amendments, 33 U.S.C.A. § 1342(k) (Supp.1974), specifically provides that "in any case where a permit for discharge has been applied for," there can be no violation of the Refuse Act until December 31, 1974. It contends that on this basis the suit should have been dismissed. A savings clause, however, provides that the amendments, enacted after this suit was filed, but before it was tried, shall not cause abatement of any suit commenced prior to the enactment of the law. The issue for determination is whether the scope of the savings clause includes this kind of suit.[1]

---

1. Although the Refuse Act is explicitly preserved by section 511(a)(2)(B) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C.A. § 1371(a)(2)(B) (Supp.1974), its role is significantly diminished in the new regulatory structure. Section 402 of the amended FWPCA, 33 U.S.C.A. § 1342 (Supp.1974), establishes the National Pollutant Discharge Elimination System (NPDES) of permits, which replaces the Refuse Act Permit Program established pursuant to Executive Order No. 11574, 3 C.F.R. 292 (1974). No Refuse Act permits are to be issued after the enactment of the Amendments on October 18, 1972. FWPCAA § 402(a)(5). Instead, NPDES permits are deemed to be permits issued under the Refuse Act. Id. § 402(a)(4). Refuse Act permit applications pending when FWPCAA became law were converted into NPDES permit applications by subsection 402(a)(5). Where an NPDES permit has been applied for but no final administrative disposition has been made, subsection 402(k) provides that, until December 31, 1974, the discharge in question shall not be a violation of either the amended FWPCA or the Refuse Act (unless the applicant's

The savings provision provides:

No suit, action, or other proceeding lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity or in relation to the discharge of his official duties under the Federal Water Pollution Control Act as in effect immediately prior to the date of enactment of this Act shall abate by reason of the taking effect of the amendment made by . . . this Act. . . .

86 Stat. 896, note to 33 U.S.C.A. § 1251 (Supp.1974).

 The savings clause thus preserves two classes of pending actions brought by or against the Administrator or any other officer or employee of the United States: (1) those actions brought by or against them in their official capacities; and (2) those actions brought by or against them in relation to the discharge of their duties under the old FWPCA. Refuse Act cases fall into the first class. Such a reading of the savings clause is consistent with the rule that savings clauses are to be broadly construed. *See* De La Rama S.S. Co. v. United States, 344 U.S. 386, 389–390, 73 S.Ct. 381, 97 L.Ed. 422 (1953); NLRB v. National Garment Co., 166 F. 2d 233, 237 (8th Cir. 1948); Quirk v. United States, 161 F.2d 138, 143 (8th Cir. 1947).

The correctness of the above interpretation of the savings clause is supported by the relevant legislative history. In the course of the debates prior to passage of the 1972 Amendments, several members of Congress expressed concern that section 402(k) might be construed to terminate pending Refuse Act litigation. They were assured by the bill's managers that section 4(a) was intended to and would save all Refuse Act suits then pending in the courts.[2]

---

failure to provide requested information has caused the administrative delay). In this respect Congress departed from the pattern of the Refuse Act Permit Program. Under the RAPP regulations, the pendency of a permit application would not prevent a Refuse Act suit. 33 C.F.R. § 209.131(d)(4) (1973).

2. Senator Muskie supplemented his opening remarks with a written statement which dealt *inter alia*, with the effect of the savings provision.

The Conferees also agreed that there should be no enforcement action taken for failure to have a permit until December 31, 1974, in order to provide an adequate opportunity for the Administrator to review and issue or not issue permits for the applications that are pending on date of enactment or will be pending as a result of expansion of the program.

Concern has been expressed that the "immunity" provision will cause dismissal of pending enforcement actions under the Refuse Act of 1899. Section 4 provides the following relevant words pertaining to the Refuse Act: "No suit, action, or other proceeding lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity . . . shall abate by reason of the taking effect of the amendment made by section 2 of this Act."

Without any question it was the intent of the Conferees that this provision include enforcement actions brought under the Refuse Act, the Federal Water Pollution Control Act, and any other Acts of Congress.

118 Cong.Rec.S. 16875 (daily ed. Oct. 4, 1972).

Senator Griffin raised the point during the debate.

MR. GRIFFIN. Mr. President, I take this time for the purpose of establishing a legislative history.

After reviewing the conference report on S. 2770, I became deeply concerned that one provision in the conference agreement might adversely affect a number of pending lawsuits brought under the Refuse Act of 1899.

One such suit is now pending against the Reserve Mining Co. of Silver Bay, Minn., a company which has been dumping 67,000 tons of pollutants daily into Lake Superior.

The provision I refer to is section 402(k)

. . . .

I am also aware of section 4 of the bill, a provision to preserve pending Federal suits.

However, when these provisions are read together, it is not altogether clear what effect is intended with respect to pending Federal court suits against polluters violating the Refuse Act of 1899.

If section 402(k) were read as having retroactive effect, then about 170 Federal suits filed against polluters prior to the date of enactment of the bill, including the Reserve case, could be dismissed.

During the last 2 years there have been some 300 criminal convictions under section 13 of the Refuse Act and over 120 civil actions most of which resulted in the defendants either stopping the dumping or agreeing to institute pollution control programs. On the other hand, it is my understanding there have been only a handful of prosecutions for violation of water quality standards since the Federal Water Pollution Control Act was enacted.

In view of this—a fact recognized by the conferees—it is inconceivable that the Senate would want to emasculate the best available enforcement device now available —the Refuse Act—and legislatively dismiss suits pending under it.

Accordingly, Mr. President, it is essential that any possible ambiguity be cleared up so that the legislative history will leave no doubt about the intent of the conferees and the Members of this body.

. . . . .

MR. GRIFFIN. I wonder if I might address my question to the distinguished manager of the bill on this point.

MR. MUSKIE. Yes, indeed. I appreciate having this point raised by the Senator from Michigan. I wish to put my answer in this form.

Section 4(a) of the conference report is an identical provision to that which appeared in the House bill.

Section 402(k) of the conference report is similar, although not identical, to section 402(l) of the House bill.

No question has even been raised up to this point as to the relationship of these two sections. The gentleman's question is the first indication that anyone has ever considered that there was an ambiguity in the two provisions.

Section 4 provides and I quote the relevant words pertaining to the Refuse Act:

"No suit, action, or other proceeding lawfully commenced by or against the Administrator of any other officer or employee of the United States in his official capacity . . . shall abate by reason of the taking effect of the amendment made by section 2 of this Act."

Without any question it was the intent of the conferees that this provision include enforcement actions brought under the Refuse Act, the Federal Water Pollution Control Act, and any other acts of Congress.

I hope and trust that nothing said on this floor or elsewhere would lead anyone to believe that section 4 is anything but totally clear as to its meaning and intent.

MR. GRIFFIN. I thank the manager of the bill. Certainly that does clarify the meaning as to the intent of the conferees, and it would clearly indicate that the suit now pending against the Reserve Mining Co. under the Refuse Act would not be affected by this bill.

MR. MUSKIE. That is my belief.

*Id.* at S 16882–83.

Senator Hart subsequently stated his reliance on Senator Muskie's explanation.

MH. HART. . . . .

Alarm has been voiced that efforts to prevent environmental damage to Lake Superior involving the discharge of taconite tailings by Reserve Mining Co., will be hindered by this legislation. It is my understanding, however, after the explanation of the Senator from Maine, that the suit now pending against the Reserve Mining Co., under the Refuse Act of 1899 will in no way be affected nor will any of the other counts under the existing Federal Water Pollution Control Act or other law.

*Id.* at S 16890.

The House of Representatives also considered the relationship between sections 402(k) and 4(a). The following colloquy presented and resolved the potential ambiguity.

MR. DINGELL. Mr. Speaker, I rise in support of this conference report, although I have some misgivings concerning certain features of the report, as I will note in more detail.

. . . . .

At this point, I would like to direct a question to the chairman of the committee with regard to section 402(k) of the bill and section 4(a) of the bill.

It is my understanding that section 402(k) of the bill would grant to any discharger of waste into our Nation's water total immunity from prosecution under the Federal Water Pollution Control Act and under the Refuse Act until the end of 1974. Of course, to obtain this immunity, the polluter would have to file an application for permit, and that application must still be pending.

I am deeply concerned what effect this provision will have on pending law suits and other administrative actions which EPA has initiated over the past 2 years. In particular, I am concerned about the effect of this provision on the Reserve Mining case. The gentleman knows that I have corresponded with him on this issue in the last few days in the full belief that the gentleman and other members of the conference never intended to halt these

Rohm and Haas contends that these statements should be disregarded as attempts by certain legislators to subvert the democratic process of legislation by fabricating a legislative history after failing to obtain statutory language consonant with their wishes. The Company points out that every time the savings provision was quoted to demonstrate its applicability to Refuse Act suits, the words "or in relation to the discharge of his official duties under the Federal Water Pollution Control Act" were deleted. The Company also points out that section 4(a) originated in H.R. 11896, the House version of the bill, and passed both houses after adoption by the House and Senate Conferees without change in language. Rohm and Haas urges that the intent of the House Committee on Public Works, which drafted the savings provision originally, should have special significance in the legislative history. The report accompanying H.R. 11896 by that Committee limited the savings clause to "actions commenced by or against the Administrator in the carrying out of his responsibilities under the Federal Water Pollution Control Act."

H.R.Rep.No.92–911, 92d Cong., 2d Sess. 141 (1972).

The intent of the original authors is not controlling. We must search for congressional intent at the time of passage. Although the words of the savings clause did not change after conception, their meaning apparently did as the bill moved through the legislative process. The House Committee's narrow reading of the provision, restricting it to FWPCA actions, was abandoned by the Conference Committee. "Section 4 of the House amendment provides that pending suits, actions, and other proceedings are not to abate by reason of the amendments made by this Act." Conf.Rep.No.92–1236, 92d Cong., 2d Sess. (1972), 1972 U.S.Code Cong. & Admin.News, p. 3829. The bill's managers quoted only so much of the provision as was relevant to whether the savings clause applied to Refuse Act suits. The language omitted, referring to FWPCA duties, was unnecessary to the resolution of the question posed. In any event, no member of the Conference Committee took the floor to dispute the managers' interpretation of the Committee's intent.

---

cases until the end of 1974. I would, therefore, appreciate it if the gentleman would relieve my mind and those of many citizens of this Nation and the Great Lakes by assuring me that it is the intention of the House conferees that the immunity granted under section 402(k) is applicable solely to dischargers who are not on the date of enactment of this bill being prosecuted by the Government, either civilly, criminally, or administratively, under this law or under the Refuse Act. I understand this to be the case because of the language of section 4(a) of the bill entitled "Savings Provision," and because the bill, in fact, does not repeal the Refuse Act of 1899.

Does the gentleman concur with my statement?

 . . . . .

MR. WRIGHT. Mr. Speaker, section 4(a) of the conference report is an identical provision to that which appeared in the House bill.

Section 402(k) of the conference report is similar although not identical, to section 402(l) of the House bill.

No question has ever been raised up to this point as to the relationship of these two sections. The gentleman's question is the first indication that anyone has ever considered that there was an ambiguity in the two provisions.

Section 4 provides and I quote the relevant words pertaining to the Refuse Act:

"No suit, action, or other proceeding lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity . . . shall abate by reason of the taking effect of the amendment made by section 2 of this Act."

Without any question it was the intent of the conferees that this provision include enforcement actions brought under the Refuse Act, the Federal Water Pollution Control Act, and any other acts of Congress.

I hope and trust that nothing said on this floor or elsewhere would lead anyone to believe that section 4 is anything but totally clear as to its meaning and intent. Id. at H 9123–24 (daily ed. October 4, 1972).

Finally, it is significant that the Senate Committee on Public Works reported that only one FWPCA enforcement case had reached the courts in the more than twenty years since that Act was passed in 1948. S.Rep. 92–414, 92d Cong., 1st Sess. (1971), 1972 U.S.Code Cong. & Admin.News, p. 3672. It is unlikely that legislators, aware of the nonexistence of FWPCA actions, would have concerned themselves about saving those actions and inconsistently have permitted abatement of numerous cases under the Refuse Act.

Other federal courts have held that the 1972 Amendments had no effect upon pending litigation under the Refuse Act. United States v. Ira S. Bushey & Sons, 363 F.Supp. 110 (D.Ct.), aff'd mem., 487 F.2d 1393 (2d Cir. 1973), cert. denied, 417 U.S. 976, 94 S. Ct. 3182, 41 L.Ed.2d 1146 (1974); United States v. United States Steel Corp., 356 F.Supp. 556 (N.D.Ill.1973); United States v. Consolidation Coal Co., 354 F. Supp. 173 (N.D.W.Va.1973); see United States v. Kennebec Log Driving Co., 356 F.Supp. 344 (D.Me.), vacated and remanded on the merits, 491 F.2d 562 (1st Cir. 1973), cert. denied, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974).

■ Rohm and Haas, reading the savings provision narrowly, would limit it to actions brought by "the Administrator or other officer or employee of the United States." The Company perceives this suit as outside the savings clause because it was brought by the United States. The short answer to this contention is that the suit was authorized by the Assistant Attorney General, Lands and Natural Resources Division, and the United States Attorney for the Southern District of Texas, upon the recommendation of the Administrator of

the Environmental Protection Agency. The complaint was signed by the Chief Assistant United States Attorney for the Southern District. Each of the above officials is an "officer or employee of the United States." Responsibility to enforce the Refuse Act lies with the Department of Justice and the United States attorneys. 33 U.S.C.A. § 413; see Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86–88 (2d Cir. 1972). Under these circumstances, this suit brought in the name of the United States is within the ambit of the savings clause.[3] Cf. United States v. Burns, 54 F. 351, 355 (C.C.D.W.Va. 1893); United States v. Interlake Steel Corp., 297 F.Supp. 912, 914 (N.D.Ill. 1969).

## II.

■ Rohm and Haas asserts that the plaintiff should first seek relief from an expert administrative body, the Environmental Protection Agency (EPA), before being allowed to proceed against Rohm and Haas in a judicial proceeding. It would have the Court apply the so-called doctrine of primary jurisdiction: that in cases raising issues of fact not within the conventional experiences of judges, or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should first determine some aspects of the proceeding. United States v. Western Pacific R.R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). See generally K. Davis, Administrative Law Treatise §§ 19.01–.09 (1958, Supp.1970).

This argument fails for several reasons. First, the question in this case is not what standard of discharge EPA

---

3. It is noteworthy that Senators Griffin and Hart and Representative Dingell were concerned about the effect of the savings clause on United States v. Reserve Mining Co., 56 F.R.D. 408 (D.Minn.1972), a civil action brought in part under the Refuse Act in the name of the United States. See note 2, supra. Ultimately, Reserve Mining's discharges were enjoined without deciding the Refuse Act question. United States v. Reserve Mining Co., 380 F.Supp. 11, at 58 (D.Minn.1974), conditionally stayed pending appeal, 498 F.2d 1073 (8th Cir. 1974).

may eventually permit, but rather what quantities of industrial wastes, if any, an equity court should permit a Refuse Act violator to discharge pending final EPA action on the Company's application for a permit. *Cf.* United States v. Joseph G. Moretti, Inc., 478 F.2d 418 (5th Cir. 1973).

Second, the scientific, technical, and complex factual issues in the case bear on the kind of applicable relief that should be granted, rather than on whether the defendant is in violation of the Act. Discharges in violation of the Refuse Act may be completely halted by injunction and no reason appears why lesser steps may not be taken. *See* United States v. Crow, Pope & Land Enterprises, Inc., 474 F.2d 200 (5th Cir. 1973); United States v. Kennebec Log Driving Co., 491 F.2d 562, 565 (1st Cir. 1973), cert. denied, 417 U.S. 910, 94 S. Ct. 2607, 41 L.Ed.2d 214 (1974); Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81 (2d Cir. 1972); United States v. Ira S. Bushey & Sons, 363 F.Supp. 110 (D.Vt.), aff'd mem., 487 F.2d 1393 (2d Cir. 1973), cert. denied, 417 U.S. 976, 94 S.Ct. 3182, 41 L. Ed.2d 1146 (1974); United States v. Lindsay, 357 F.Supp. 784 (E.D.N.Y. 1973); United States v. United States Steel Corp., 356 F.Supp. 556 (N.D.Ill. 1973); Natural Resources Defense Council v. Grant, 355 F.Supp. 280 (E.D. N.C.1973); United States v. Consolidation Coal Co., 354 F.Supp. 173 (N.D.W. Va.1973); United States v. Kentland-Elkhorn Coal Corp., 353 F.Supp. 451 (E.D.Ky.1973); United States v. Asbury Park, 340 F.Supp. 555 (D.N.J.1972); United States v. Armco Steel Corp., 333 F.Supp. 1073 (S.D.Tex.1971); Bass Anglers Sportsman's Soc'y v. Scholze Tannery, Inc., 329 F.Supp. 339 (E.D.Tenn. 1971); United States v. Florida Power & Light Co., 311 F.Supp. 1391 (S.D.Fla. 1970); *Cf.* Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S. Ct. 379, 19 L.Ed.2d 407 (1967); United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). The moulding of equitable relief, even in

highly technical matters, is the proper concern of the courts.

Third, we agree with the United States that the data involved here is not inherently more complex than evidence routinely considered in antitrust suits, patent actions, and rate-setting adjudications.

Fourth, the agency to which Rohm and Haas would have us turn was very much a part of this litigation. EPA's experts were consulted and testified in detail and at length throughout this proceeding. The trial court was advised of EPA's position on the relevant issues.

Fifth, even under the 1972 Amendments the enforcement provision, FWPCAA § 309, 33 U.S.C.A. § 1319 (Supp.1974), states that the Administrator may bring a civil or criminal action in District Court to enforce the provisions of the Act. Absent from this provision is any indication that violations of the Refuse Act or the FWPCA must be considered in administrative proceedings prior to initiation of judicial action.

██ Because the issue is what an equity court should do pending EPA action, however, the District Court's order must be modified so as not to govern the Company's conduct after a permit has been issued. A polluter discharging wastes in accordance with the terms and conditions of an NPDES permit is not in violation of the Refuse Act. *See* FWPCAA § 402(a)(4), 33 U.S.C.A. § 1342(a)(4) (Supp.1974). The decree should be effective only as long as Rohm and Haas remains in violation of the Act. In contrast to the regulations implementing the earlier U.S. Army Corps of Engineers Refuse Act Permit Program, the EPA rules governing the National Pollution Discharge Elimination System do not require that the permit include limitations embodied in the resolution of a civil action under the Refuse Act. *Compare* 33 C.F.R. § 209.131(d) (4) (1973) *with* 40 C.F.R. §§ 125.11, 21–.24, .42 (1973).

We therefore remand to the District Court for appropriate modification consistent with this decision.

### III.

Rohm and Haas seeks a reversal of the District Court's injunction from further barging to sea of waste materials, which is contained in the following three lines of the Court order:

*Barging to Sea of Untreated Waste and Mother Liquors:*

None after the date of this judgment.

Rohm and Haas has been disposing of ammonium sulfate mother liquor, a waste material, in the Gulf of Mexico approximately 100 to 125 miles from the coast of Texas since January 1969.

 The Government twice tried to bring the bargaining issue directly into the case by amending its complaint, but the District Court denied both motions to amend, once before trial and once after trial. Nevertheless, the District Court enjoined Rohm and Haas from further deep sea barging without any comment as to the reason or legal basis for the ruling. In fact, there are no findings of fact or conclusions of law on the barging issue which are required under Federal Rule of Civil Procedure 52(a). Accordingly, the order as to deep sea barging must be vacated in view of the District Court's failure to comply with Rule 52(a). Lettsome v. United States, 434 F.2d 907 (5th Cir. 1970); Acme Boat Rentals, Inc. v. J. Ray McDermott & Co., 407 F.2d 1324 (5th Cir. 1969); Mladinich v. United States, 371 F.2d 940 (5th Cir. 1967).

The Refuse Act under which this suit was brought applies only to discharges of refuse matter "into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water." 33 U.S.C.A. § 407. Until shortly before the passage of the FWPCAA, the U. S. Army Corps of Engineers, charged with administering the Refuse Act, apparently took the position that ocean waters were not covered at all by that Act. *See* 33 C.F.R. § 209.260 (1971). In September 1972, the Corps broadened its interpretation, but only to include ocean waters within the three mile territorial limit.

> The navigable waters of the United States over which Corps of Engineers regulatory jurisdiction extends include all ocean and coastal waters within a zone 3 geographic (nautical) miles seaward from the coast line. Wider zones are recognized for special regulatory powers, such as those exercised over the Outer Continental Shelf.

33 C.F.R. § 209.260(k)(1) (1973).

The Government concedes the Refuse Act by its terms does not touch upon the barging of waste material to sea. There are no findings of fact which would support the District Court's order under any other theory, such as some kind of federal common law of nuisance or water pollution, the necessary implementation of an effective decree under the Refuse Act, or the interstitial use of equitable power to protect the environment which is asserted by the Government on authority of Illinois v. Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), and United States v. Ira S. Bushey & Sons, 346 F.Supp. 145 (D.Vt. 1972).

The Government argues that we could support the limitation imposed on Rohm and Haas with respect to deep sea barging under the Marine Protection, Research, and Sanctuaries Act of 1972, which became law on October 23, 1972. Pub.L. No. 92–532, 33 U.S.C.A. § 1401 et seq. (Supp.1974), as amended, (Supp. June 1974). This legislation regulates the transportation of material for dumping into ocean waters. Section 102, 33 U.S.C.A. § 1412 (Supps. 1974 & June 1974), the Environmental Protection Agency Administrator is authorized to issue permits under certain conditions. The following factors are to be considered: the need for the proposed dumping; its effect on human health and welfare, including economic, esthetic, and recreational values; its effect on

fisheries resources, plankton, fish, shellfish, wildlife, shore lines, and beaches; its effect on marine ecosystems; the persistence and permanence of the effects of the dumping; the effect of dumping particular volumes and concentrations of materials; alternate locations and methods of disposal or recycling; and the proposed dumping's effect on alternate uses of oceans.

This argument was not treated by the trial court and we will not consider it here. We will remand the case for such consideration as the District Court deems appropriate. In view of the complex and technical nature of the factors to be evaluated as set forth in section 102, the District Court may well want to consider whether the decision as to ocean dumping should be left initially to the Environmental Protection Agency under the doctrine of primary jurisdiction.

In any event, we vacate that portion of the injunction prohibiting barging to sea and remand for such further proceedings as the District Court may deem appropriate in the light of our decision.

### IV.

Rohm and Haas also argues that the District Court's order, insofar as it establishes limitations on discharges into the Houston Ship Channel, does not comply with Federal Rules of Civil Procedure 52(a) and 65(d).

In cases tried without a jury, Rule 52(a) mandates findings of fact and conclusions of law sufficiently detailed and exact to indicate the factual basis for the District Court's ultimate conclusion. Lettsome v. United States, 434 F.2d 907 (5th Cir. 1970); Acme Boat Rentals, Inc. v. J. Ray McDermott & Co., 407 F.2d 1324 (5th Cir. 1969). Although the rule refers only to the granting or refusing of interlocutory injunctions, the language "all actions tried upon the facts without a jury" encompasses suits in which permanent injunctions are issued. Alberti v. Cruise, 383 F.2d 268 (4th Cir. 1967); Chas. Pfizer & Co. v. Zenith Laboratories, Inc., 339 F.2d 429 (3d Cir. 1964); see Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508 (5th Cir. 1969).

Rohm and Haas contends that the individual effluent limitations established by the Court are not supported by findings. This is a Refuse Act suit. The findings of fact requisite for relief are that the Company discharged refuse matter into a navigable water of the United States. These findings the District Court made. They lead to the legal conclusion that the Company violated the Refuse Act. Rule 52(a) is thus satisfied.

Rule 65(d) prescribes the form and scope of injunctions. The limits established by the Court are unquestionably specific. No discharges are permitted in excess of given amounts of the various pollutants, expressed in terms of pounds per day. The question is whether the District Court adequately stated reasons for the injunction, as is also required by the rule. It is apparent from the Court's references to the harmfulness of the pollutants and to the continuous nature of the discharges that an injunction is necessary to prevent further harm. It has been held that a finding of threatened irreparable injury satisfies the reasons requirement of Rule 65(d). Pennsylvania R.R. v. Transport Workers Union, 278 F.2d 693 (3d Cir. 1960); Ross-Whitney Corp. v. Smith Kline & French Laboratories, 207 F.2d 190 (9th Cir. 1953); Smotherman v. United States, 186 F.2d 676 (10th Cir. 1950); In re Rumsey Mfg. Corp., 9 F.R.D. 93 (W.D.N.Y.), rev'd on other grounds sub. nom. McAvoy v. United States, 178 F.2d 353 (2d Cir. 1949).

### V.

Rohm and Haas argues in the alternative that the District Court's injunction, if considered procedurally adequate,

must be set aside because the Court failed to apply the proper legal standards which it contends should be those established by the FWPCAA to govern the issuance of NPDES permits. Although the savings clause does not prohibit the Amendments from affecting pending actions, it does not require application of the FWPCAA standards to pending Refuse Act suits.

Rohm and Haas argues, however, that if the FWPCAA standards are not applied in establishing effluent limitations it will be denied equal protection of the laws, "or perhaps more accurately an equal right to violate the law." United States v. Joseph G. Moretti, Inc., 478 F.2d 418, 431 n. 47 (5th Cir. 1973). The Company points out that essentially all other polluters, including its neighbors on the Houston Ship Channel, will have their effluent limitations determined under the amended FWPCA while it will not. The number of cases prosecuted by the Justice Department under the Refuse Act negates any contention that discrimination in the form of a vendetta is being practiced against Rohm and Haas alone. The difference between the standards applied to defendants in Refuse Act suits brought before the enactment of FWPCAA and that applied to other polluters is the result of the savings clause. Whenever legislation changes a legal standard but saves pending actions, there is apt to be differing treatment of those otherwise similarly situated. The difference in treatment does not rise to the constitutional level of a denial of equal protection. In any event, the effect of the District Court's decree will not survive the issuance of a permit, which will depend upon the application of FWPCAA standards to Rohm and Haas equally with all other applicants.

## Conclusion

The Court's injunction is affirmed as to the discharge into the Houston Ship Channel but remanded for modification to limit the duration of the injunction to that period prior to the proper issuance of a permit, and is vacated and remanded insofar as it enjoins the barging of waste material to sea.

Affirmed in part, vacated in part, and remanded.